# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 18-05010-01-CR-SW-RK |
| JAMES LOYD WAINRIGHT | ) ) ) |
| Defendants. | ) |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Before the Court is the Motion to Suppress Evidence filed by Defendant James Loyd Wainright. (Doc. 21.) Pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1, this action was referred to the undersigned for preliminary review. The undersigned held an evidentiary hearing on the suppression issues on November 1, 2018. (*See* Docs. 28 and 31.) For the reasons below, it is **RECOMMENDED** that Defendant's Motion to Suppress be **DENIED**.

On February 21, 2018, a federal grand jury returned a three-count indictment charging Defendant James Loyd Wainright ("Wainright") for violations of 18 U.S.C. §§ 2251 and 2252 regarding allegations of sexual exploitation of children and distribution of child pornography. (Doc. 1.) In the instant motion, Wainright moves to suppress all evidence found and seized because of the warrantless search of his vehicle on August 9, 2017, including the seizure of his cell phone, as well as all evidence obtained following this search and seizure as fruits of the poisonous tree. (Doc. 21.) At the evidentiary hearing, Wainright was present with his attorney, David Mercer. The Government was represented by Assistant United States Attorney Ami Miller. The Court heard testimony from Keith Meyer, Detective with the Webb City, Missouri Police

1

Department ("WCPD"), and Charles Root, Detective with the Joplin, Missouri Police Department and Cyber Crimes Task Force Officer ("TFO") for the Federal Bureau of Investigations ("FBI").

## I. Findings of Fact[1]

In August of 2017, Det. Meyer began an investigation of suspected child sex crimes after three WCPD reports all identified a male suspect with the same description and vehicle offering money to young boys near Hatten Park in Webb City, Missouri. In the first report, taken June 9, 2017, WCPD Corporal Joshua Smith detailed his conversation with a mother at a residence near Hatten Park, who stated that an unknown white male driving a silver passenger car had stopped and asked her eleven-year-old son C.D. if he knew where "DP" lived. (*See* Def. Ex. 3, Gov. Ex. 5.) The man drove away when C.D. denied knowing DP, but later returned and asked C.D. if he wanted to "make a couple hundred bucks." C.D. ran inside, and the man drove away. Officer Smith also spoke with a neighbor, who reported she had observed a white male in a silver car, approximately thirty years old, who was wearing a red hat and sunglasses, was short in stature and heavy set with brownish red hair. She also heard the man offer C.D. "a couple hundred bucks."

In a second report, on June 25, 2019, WCPD Officer Jeremiah Woolverton spoke with a mother at a residence near Hatten Park who stated that her fifteen-year-old son, D.N., and his thirteen-year-old friend, M.S., were approached by a white male in his thirties with a red beard and pony tail, wearing a white or grey hat, driving a silver four-door passenger car with a spoiler on the back. (*See* Def. Ex. 5, Gov. Ex. 6.) The man allegedly offered the boys money for sex, showed the boys $200 in cash and told them to "get their dicks hard and meet him at the park." In a third report taken by WCPD Officer Kenneth Anderson on August 6, 2017, D.N.'s father reported

---

[1] The facts set forth herein are taken from the testimony adduced at the hearing on the instant Motion and the exhibits admitted during the hearing. The hearing transcript appears as Doc. 31, the Government's exhibit list appears as Doc. 29, and the Defendant's exhibit list appears as Doc. 30.

a male in a silver four-door passenger car had approached his stepson and stepson's friend M.S. at Hatten Park, asked them if they wanted to make some money, but they refused. (*See* Def. Ex. 4, Gov. Ex. 7.) The boys again described the man as a white male in his thirties with a dark bandana and a red beard. They provided a Missouri license plate number of KM63MG. Officer Andersen ran the license plate number, which checked back to an SUV that did not match the boys' description. Based on his experience that witnesses sometimes mistake or transpose characters on plates, Officer Andersen ran the plate number KN6M3G, which checked back to a silver Mazda 6 owned by Joplin, Missouri resident James Loyd Wainright, the Defendant in this matter.

On August 9, 2017, Det. Meyer observed Wainright's driver's license photo matched the description in all three reports. Around 1:30 p.m., Det. Meyer went to Wainright's address at an apartment complex in Joplin, Missouri, and observed a 2008 Silver Mazda passenger car with a spoiler on the trunk, bearing the license plate number KN6M3G, parked in front of the unit where Wainright was suspected to reside. Det. Meyer took a photograph of the silver car, knocked on Wainright's door, and a white male who matched Wainright's driver's license photo answered. During their initial conversation, Wainright admitted he recently drove to a park in Webb City and spoke to a few people because he was trying to find a friend by the name of Davy Lee or "DP." Wainright agreed to come to the Webb City Police Department for an interview the following day. He later called and agreed to reschedule the interview and meet that afternoon.

Around 2:30 p.m., Det. Meyer interviewed D.N. and his mother about the June 25 and August 6 reports. (*See* Def. Ex. 4, Gov. Ex. 8.) D.N. confirmed he remembered an incident where a man approached him and his friend and described the suspect as a white male with a red beard wearing a bandana who was driving a silver four-door car. Det. Meyer showed D.N. the photo of the silver Mazda. D.N. stated the car in the photo was the same car that approached him and M.S.

3

on both occasions. D.N. disclosed the man asked if they wanted to make $200, told them they would have to get their dicks hard and he would record them with a video camera and upload the video to his YouTube Channel. D.N. also explained when the man approached them the second time, D.N. pulled his cell phone out to take a picture and he drove away very fast. Det. Meyer showed D.N. a photo line-up with Wainright in Position # 3. (*See* Gov. Ex. 4). D.N. immediately picked the third photo of Wainright as the man who had approached and talked to them.

Det. Meyer called Det. Root in Joplin, Missouri, for his cybercrimes expertise, discussed the three reports and disclosed his concern that a cell phone was used in the commission of a crime based on D.N.'s account about a video recording and a YouTube account. Det. Root agreed to help interview Wainright. After Det. Root arrived, Det. Meyer escorted Wainright to a large conference room for an interview, and briefly left to get water. While he was absent, Det. Root enabled a recording device and read Wainright the *Miranda* warning.[2] (*See* Gov. Ex. 2.)

During the interview, Wainright agreed he was in Webb City a month and a half ago and explained he had been looking for a friend, "DP" aka "Davy P. Lee" or "David," who he previously met when he lived in the area but had not seen in a year and a half. He stated he asked a woman in a car and two "white teenage kids" if they knew David. Wainright stated he drove a silver Mazda 6 with Missouri tags registered to him and denied that anyone else had driven his car. When Det. Root explained they had three reports that identified Wainright's car and described him "to a T," and that Wainright's explanation about DP was consistent with one of the reports, Wainright admitted he had also been at the park "last Saturday" but denied that he had offered money to anyone, asked any boys about sexual acts or taken any pictures of anyone. When asked why he

---

[2] The Court notes that the recording does not capture the beginning of the conversation and the Miranda warning is not heard. Det. Root testified, and his report reflects, he had trouble with the recording device. However, halfway through the interview Defendant acknowledges in response to questioning that he was read his rights at the beginning of the conversation and agreed he understood his rights.

4

was in the area on multiple occasion, he stated he was not from the area and was just driving around to look around. When asked why he did not mention being at the park last weekend despite his earlier admission that he had been in the area a month and a half ago, Wainright explained he does not keep track of every time he has driven somewhere and only disclosed the earlier occasion when he had talked to people in the area. He admitted using internet in his apartment to look at e-mails, YouTube and search the internet. He denied having or using Facebook. He admitted he had a YouTube account but denied posting videos on it. He stated he owned a Samsung S5 cell phone and although he denied owning a camera, agreed his phone has a camera.

     Det. Root explained they wanted to look at Wainright's phone to clear things up. Wainright reiterated he had not done anything wrong and would not consent to a search. Det. Meyer observed Wainright was very uptight and nervous during the interview. Based on his investigation, the report that Wainright had asked to video record the boys, his training and experience investigating child sex crimes and his knowledge of how cell phones are utilized in these cases, Det. Meyer believed Wainright's cell phone contained photos or video evidence of the specific incidents related to the reports or others. Det. Meyer informed Wainright they would need to seize his cell phone and would apply for a search warrant. Wainright responded "do what you gotta do," and told detectives the phone was in the passenger seat of his car. Det. Meyer escorted Wainright to his vehicle, observed a cell phone in the front passenger seat, opened the door and seized the phone. He provided Wainright a receipt and gave the phone to Det. Root until a warrant could be obtained.

     At 10:30 a.m. on August 10, 2017, Det. Meyer interviewed M.S. and his mother at the WCPD. M.S. stated he remembered both incidents. When shown a photo of the car and photo line-up with Wainright in the third position, M.S. confirmed the car in the photo was the same car that had approached him and D.N. on both occasions and immediately picked Wainright's photo,

5

as the man who had approached them. M.S. explained the suspect asked if they wanted $100 each, told them they would have to get their dicks hard and "jack off," and explained he would record them with a video camera and upload the video to his YouTube.

Around 4:15 p.m., on August 10, 2017, Det. Root applied for and obtained a Jasper County search warrant granting permission to search Wainright's seized Samsung cell phone. (*See* Gov. Ex. 1.) Based on his extensive experience in Cyber Crimes, the warrant alleged investigators had probable cause to search the phone based on consistency between the reports and Wainright's admissions he had been in the area, had talked to two teenage boys and had asked people about his friend "DP"; that a man matching Wainright's description had offered boys money in exchange for sexual acts; that two boys had positively identified Wainright in a photo lineup; that Wainright admitted using YouTube; and that two boys had disclosed Wainright's request to video such acts and upload them to YouTube. The affidavit also discussed the prevalence of cell phone use to access websites like YouTube, and, more specifically, how YouTube can be utilized to discretely distribute images or videos regarding child sex crimes with other like-minded individuals.

During the hearing, Det. Root discussed his extensive experience investigating child and sexual abuse crimes and cybercrimes involving children including the "hundreds of hours" of training he has received in these areas. He testified that "cell phones have taken the lead as the focus of evidence" in child sex crimes because of their large storage capabilities, access to numerous applications, ability to take digital images and videos, and to access the internet. Based on his twenty-four years in law enforcement and eleven years on the Cyber Task Force, as well as the WCPD reports, Wainright's interview statements, and his personal knowledge that a YouTube channel was associated with one of the reports, Det. Root believed an "internet capable device was being utilized in this case" and that they had probable cause to search Wainright's cell phone.

Once the warrant was served, Det. Root forwarded the cell phone, which had not yet been searched, for forensic examination. The examination revealed two bookmarks titled "How to transfer files between an Android device and a Computer – YouTube," along with web history searches using common child pornography terms such as "Twink," "Young" and "Pthc," which stands for preteen hard core. (*See* Gov. Ex. 3.) Examination of the phone also revealed images and video files depicting young teenagers engaged in various sexual activity. The information discovered on the phone was used by law enforcement to obtain and execute a search warrant of Wainright's residence. Approximately six months later, this indictment followed. (Doc. 1.)

## II. Conclusions of Law

Wainright argues that Det. Meyer's entry into his vehicle was an unreasonable warrantless search and the subsequent seizure of his Samsung cell phone was an unreasonable warrantless seizure. He does not challenge the constitutionality of the Jasper County search warrant issued to search the contents of his cell phone, but despite this, argues any evidence obtained because of the unlawful search and seizure should be suppressed as fruits of the poisonous tree. In response, the Government argues the search of Defendant's car was justified by the automobile exception to the warrant requirement, and, further, the temporary seizure of the cell phone until the issuance of the search warrant one day later was justified based on exigent circumstances. The Government further argues that even if the seizure of the phone was unreasonable, evidence derived from the search of the phone came from an independent source and should not be suppressed.

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found because of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-

79 (8th Cir. 2011). Searches conducted pursuant to established and well-delineated exceptions do not require a warrant and are not unreasonable. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Under the automobile exception, officers can conduct a warrantless search of a vehicle when they have probable cause to believe the vehicle contains evidence of a crime. *United States v. Vore*, 743 F.3d 1175, 1179 (8th Cir. 2014). Probable cause to search exists where, considering the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.*; *United States v. Colbert,* 605 F.3d 573, 576 (8th Cir. 2010).

Here, detectives testified they searched Wainright's car because they believed he had committed child enticement and that his cell phone, located in his car, contained evidence of this crime or other similar crimes. Before the search, Det. Meyer knew a man matching Wainright's description, driving a vehicle identical to Wainright's, encountered three minors asking if they knew where "DP" lived and if they wanted to make some money. Two minors reported the man had specifically offered money for sexual acts. D.N. positively identified Wainright in a lineup and reported Wainright said he would "video" these acts and "upload" it to YouTube. Wainright admitted, consistent with these reports, he drove a silver car, had been in the area, had asked people in the area about his friend "DP," and had talked to two boys near Hatten Park. He also admitted he owned a cell phone that was capable of recording video, that he used the internet to access YouTube, and that this phone was in his car. During his interview, Detectives believed Wainright was nervous and uptight and offered inconsistent explanations regarding when and why he had been near Hatten Park. Based on the WCPD reports and his investigation, Det. Meyer believed Wainright's cell phone contained evidence related to solicitation or other crimes. Det. Root testified, based on his training and experience and knowledge that a YouTube channel was associated with a report, he believed an "internet capable device was being utilized in this case."

8

On cross examination, both detectives admitted they did not have direct evidence that Wainright used his cell phone to "video" sexual acts of minor boys. The evidence also demonstrates the boys declined his solicitations, never observed a phone or engaged in electronic communication with Wainright.[3] Yet, Wainright's suggestion that investigators lacked probable cause because they did not know with certainty whether he used his personal cell phone or whether the phone contained incriminating evidence of child sex crimes ignores the non-technical common-sense approach of probable cause. *Colbert*, 605 F.3d at 578. Probable cause deals with probabilities, not technicalities, requiring "only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243-44 n. 13 (1983). "[P]robable cause is a fluid concept" focused on the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id*.

With this framework in mind, the Eighth Circuit has recognized "an intuitive relationship between acts such as child molestation or enticement and possession of child pornography." *Colbert*, 605 F.3d at 578-79. In considering whether a suspect's attempt to lure a young child from a park to his home to watch children's movies supported a warrant to search Defendant's home for child pornography, the Eighth Circuit deferred to the judge who issued the warrant in reliance on the facts and expertise in the affidavit. *Id*. The panel reasoned that courts consider probable cause through a "commonsense, nontechnical analysis" from the perspective of law enforcement officers, whose training and experience informs their knowledge about possession of incriminating evidence. *Id*. (*citing Gates*, 462 U.S. at 232). The Court found the facts in the affidavit provided a "fair probability" that the evidence sought would be found in the place to be searched. *Id*.

---

[3] *Cf. United States v. Goodale,* 738 F.3d 917, 922 (8th Cir. 2013) (probable cause to seize a laptop where sexual abuse victim provided evidence of the computer's internet search history); *United States v. Wilson,* No. 17-04106-01-CR-C-SRB, 2019 WL 418118, at *4 (W.D. Mo. Feb. 1, 2019) (probable cause to seize cell phone where officers had evidence that Defendant communicated with victim through social media applications).

9

Similarly, given the totality of the circumstances and the specific nature of the crime at issue in the present matter, detectives had a valid belief, based on their training and experience, that Wainright's explicit solicitation to video record sexual acts in exchange for money and upload it to YouTube, an action commonly done with a cell phone, created a fair probability that evidence of that or related crimes would be found on his cell phone. *Id*. (*citing United States v. Paton*, 535 F.3d 829, 836 (8th Cir. 2008) (noting "computers and internet connections have been characterized as tools of the trade for those who sexually prey on children")).[4] Detectives knew from Wainright's admission, that Wainright's cell phone was in his car. Thus, the warrantless search of his car for the limited purpose of seizing the phone was permissible pursuant to the automobile exception. Further, based on the concern that incriminating evidence on the cell phone could be destroyed, exigent circumstances justified the warrantless seizure of the phone until a search warrant could be obtained to search the phone's contents. *Riley v. California*, 573 U.S. 373, 388 (2014); *United States v. Place*, 462 U.S. 696, 701 (1983) (recognizing the Fourth Amendment permits a warrantless seizure of property where law enforcement has "probable cause to believe [the property contains] evidence of a crime . . . if the exigencies of the circumstances demand it.").[5]

Consequently, Wainright's argument that evidence obtained from the cell phone is poisonous fruit also fails. Suppressing evidence as the fruit of an illegal search or seizure depends on the "nexus between the constitutional violation and the challenged evidence." *Riesselman*, 646 F.3d at 1079. As discussed, detectives did not commit any constitutional violations as they had

---

[4] *See also United States v. Sims*, 508 Fed. Appx. 452, 460 (6th Cir. 2012) (finding that probable cause can exists even where a phone is being "used in connection with an offense or commonly used by someone committing the offense"); *Riley v. California*, 573 U.S. 373, 395 (2014) (noting "90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives").

[5] *See, e.g.*, *Goodale*, 738 F.3d at 922 (officers had probable cause to seize laptop based on victim's statements about its internet history and continued seizure until issuance of warrant was based on exigent circumstances); *United States v. Clutter*, 674 F.3d 980, 985 (8th Cir. 2012) (officers' seizure of computers "to avoid the destruction of evidence while they applied for a search warrant" was proper); *United States v. Mitchell*, 565 F.3d 1347, 1350 (11th Cir. 2009) (seizure of a computer "to ensure that the hard drive was not tampered with before a warrant was obtained" did not violate the Fourth Amendment).

10

probable cause to enter Wainright's vehicle and exigent circumstances justified the seizure of the phone. Even if Wainright could demonstrate the search or seizure was unlawful, he fails to meet his initial burden to show a "factual nexus" between a constitutional violation and the challenged evidence. *Id*. The undisputed evidence shows the warrant, which Wainright does not challenge, was based solely on the information officers gathered prior to or wholly independent of any alleged illegal search or seizure. *See Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (holding exclusionary rule inapplicable when evidence is acquired through source independent of illegality); see *United States v. Swope*, 542 F.3d 609, 613–14 (8th Cir. 2008) (warrant is an independent source when based on evidence not obtained by unlawful act). As such, any evidence obtained from the search of the phone is not related to any constitutional violation and was a product of an independent source. The evidence is thus not the fruit of any unlawful police conduct and should not be suppressed.

**III. Recommendation**

Based on the foregoing discussion, the undersigned hereby **RECOMMENDS** that Defendant's Motions to suppress any evidence obtained following the search of Wainright's car, including the seizure of his phone and any evidence obtained from the search the phone pursuant to the Jasper County Search warrant, as well as any evidence obtained from the search of Wainright's residence, be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE:   May 8, 2019